UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA M. FRAZIER,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN CREDIT RESOLUTION, INC.,<br><br>    Defendant. | Case No. 18-cv-07729-TSH<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 45 |

## I. INTRODUCTION

Plaintiff Joshua M. Frazier brings this complaint against Defendant American Credit Resolution ("ACR") alleging that it violated both the Fair Debt Collection Practices Act ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") through its debt collection activities. After the parties initially reached a settlement, ACR stopped participating, its counsel withdrew, and the Clerk entered its default. Frazier now moves for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). ECF No 45. No opposition has been filed. The Court finds this matter suitable for disposition without oral argument and **VACATES** the November 7, 2019 hearing. Fed. R. Civ. P. 78(b); Civ. L.R. 7-(1)(b). After carefully reviewing Frazier's motion and controlling authorities, the undersigned **GRANTS** the motion for the following reasons.

## II. BACKGROUND

In November 2017, Frazier obtained a payday loan from Check n' Go. Compl. ¶ 9, ECF No. 1. Due to financial hardship, he fell behind on his scheduled payments. *Id.* ¶ 10. On December 14, 2018, Frazier received a text message from ACR attempting to collect upon the debt. *Id.* ¶ 11. He received a second identical text message from ACR on December 17, 2018. *Id.* ¶ 12. ACR's entire text messages contained the following language: "YOUR ACCOUNT

1  REMAINS DELINQUENT IN OUR OFFICE. PLEASE CALL 844-864-3236 TODAY. THIS IS
FROM ACR, A DEBT COLLECTION AGENCY." *Id.* ¶ 13.  ACR failed to disclose that any
information obtained would be used for the purpose of debt collection. *Id.* ¶ 14.  Concerned,
Frazier contacted ACR on December 17, 2018 and learned that it was attempting to collect upon
the debt. *Id.* ¶¶ 15-16.  ACR represented that Frazier agreed to a payment plan but never fully
executed the agreement. *Id.* ¶ 17.  Frazier was confused by ACR's representation because he had
not previously communicated with ACR and did not agree to a payment plan with ACR or Check
n' Go. *Id.* ¶ 18.  When he demanded ACR stop contacting him, ACR stated it could continue to
contact him regardless of his demands. *Id.* ¶¶ 19-20.

Frazier filed this case on December 26, 2018, alleging he "has suffered concrete harm due to [ACR's] conduct, including but not limited to, aggravation, invasion of privacy, and emotional distress." *Id.* ¶ 23.[1]  On April 8, 2019, Frazier filed a Notice of Settlement indication the parties were "in the process of completing the final closing documents and filing the dismissal" and that the process would take no more than 60 days.  ECF No. 21.  However, on June 25, 2019, ACR's counsel filed a motion to withdraw as counsel on the grounds that ACR breached its contractual obligations and otherwise made it unreasonably difficult for counsel to carry out its representation effectively.  ECF No. 26.  ACR did not oppose the motion.  On August 5, 2019, the Court granted the motion on the condition that counsel continue to serve all papers from the Court and Frazier on ACR for forwarding purposes.  ECF No. 35.

Frazier filed the present motion on September 30, 2019.  He seeks statutory damages of $1,000 under the FDCPA, statutory damages of $1,000 under the Rosenthal Act, and attorney's fees and costs $6,560.95.  Mot. at 11.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case.  "The district court's decision whether to enter default

---

[1] In their March 21, 2019 Joint Case Management Conference Statement, the parties consented to have a magistrate judge conduct all further proceedings including trial and entry of judgment. ECF No. 19.

judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

At the default judgment stage, the factual allegations of the complaint, except those concerning damages, "together with other competent evidence submitted" are deemed admitted by the non-responding parties. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1000 (N.D. Cal. 2001); *see also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."). "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation and quotation omitted)). Therefore, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV*, 503 F.3d at 854. Further, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for courts to consider:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### IV. DISCUSSION

**A.    Jurisdiction and Service of Process**

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning

3

the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (considering subject matter jurisdiction on a 12(b)(1) motion).

### 1. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court may dismiss an action on its own motion if it finds that it lacks subject matter jurisdiction. *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Jurisdiction in this case arises pursuant to § 1692k(d) of the FDCPA, which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount of controversy." Additionally, 28 U.S.C. § 1387 grants the Court supplemental jurisdiction over Frazier's Rosenthal Act claim.

### 2. Personal Jurisdiction

#### a. Basis for Personal Jurisdiction

To enter default judgment, the Court must have a basis for the exercise of personal jurisdiction over the defendants in default. *In re Tuli*, 172 F.3d at 712. "Without a proper basis for [personal] jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007). Traditional bases for conferring a court with personal jurisdiction include a defendant's consent to jurisdiction, personal service of the defendant within the forum state, or a defendant's citizenship or domicile in the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). Absent one of the traditional bases for jurisdiction, the Due Process Clause requires that the defendant have "certain minimum contacts with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citations and quotation marks omitted). The party seeking to invoke jurisdiction has the

4

burden of establishing that jurisdiction is proper. *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

According to Frazier's complaint, ACR is a corporation organized under the laws of the state of Georgia with its principal place of business at 270 Carpenter Drive, Suite 575, Sandy Springs, Georgia 30328. Compl. ¶ 6. ACR regularly collects upon consumers located in the state of California. *Id.* "Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 830 (9th Cir. 2005). Where there is no applicable federal statute governing personal jurisdiction, courts apply the law of the state in which the court sits. Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). In California, a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10; *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution."). As such, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

The Fourteenth Amendment Due Process Clause requires that an out-of-state defendant have "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (quotation marks omitted). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

A court may exercise either general or specific jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). General jurisdiction exists where a defendant has "substantial" or "continuous and systematic" contacts

with the forum. *Id.* at 415. If general jurisdiction exists, the forum has jurisdiction over the defendant regardless of where the events giving rise to the litigation occurred. *Id.* Here, there is no indication ACR has "substantial" or "continuous and systematic" contacts with California to establish general jurisdiction.

The Court may assert specific jurisdiction over a nonresident defendant if three requirements are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted). The plaintiff bears the burden of demonstrating the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If the first two parts are satisfied, the burden shifts to the defendant to "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). While all three requirements must be met, in considering the first two prongs, "[a] strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc).

Because ACR contacted Frazier in California by telephone to collect on an alleged debt, ACR has performed acts or transactions within the forum. *Freligh v. Roc Asset Sols., LLC*, 2016 WL 3748723, at *3 (N.D. Cal. June 8, 2016), *report and recommendation adopted*, 2016 WL 3747616 (N.D. Cal. July 11, 2016) (citing *Weakley v. Redline Recovery Servs., LLC*, 723 F. Supp. 2d 1341, 1344 (S.D. Cal. 2010), *clarified on denial of reconsideration*, 2010 WL 3033801 (S.D. Cal. Aug. 2, 2010). Further, Frazier's claims arise out of the texts made by ACR and his conversation with the company. *Id.*

In order to determine whether the exercise of jurisdiction is reasonable, a defendant "must

present a compelling case that the presence of some other considerations would . . . make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Burger King*, 471 U.S. at 478 (internal quotation and citation omitted); *see also Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003). As ACR has not presented any evidence to suggest litigation will be gravely difficult and inconvenient if litigated in California, the Court finds ACR's communications with Frazier in California constitute contacts sufficient to demonstrate that ACR is subject to personal jurisdiction here.

### b. Service of Process

Personal jurisdiction also requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Federal Rule of Civil Procedure 4]." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Here, the proof of service filed by Frazier demonstrates ACR was properly served with the complaint and summons on December 31, 2018. ECF No. 9. In fact, ACR initially appeared in this case, *see* ECF No. 19, and it was only after the parties were unable to finalize the settlement and ACR did not otherwise defend against this action that the Clerk of Court entered ACR's default. ECF. No. 41.

## B. *Eitel* Factors

Applying the seven *Eitel* factors, the undersigned finds default judgment is warranted in favor of Plaintiff.

### 1. The Possibility of Prejudice

The first factor the Court considers is the possibility of prejudice if a default judgment is not entered. *Eitel*, 782 F.2d at 1471-72. Courts have held that prejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy. *See, e.g., IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010). As ACR has stopped appearing in this case and not defended itself, Frazier will likely have no recourse if default judgment is denied.

*See PepsiCo, Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Therefore, the Court finds this factor weighs in favor of granting default judgment.

### 2. Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of the substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. "Together, these factors require that plaintiff assert claims upon which it may recover." *IO Grp.*, 708 F. Supp. 2d at 989 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003)).

#### a. FDCPA

Frazier alleges ACR violated FDCPA section 1692e. Specifically, he alleges:

> Defendant violated §§1692e and e(10) when it used deceptive means to collect and/or attempt to collect the subject debt. Defendant purposefully attempted to deceive Plaintiff by stating that Plaintiff purportedly agreed to enter into a payment plan when no such commitment was ever made. Defendant willfully attempted to confuse Plaintiff in order to coerce payment from him. Moreover, Defendant also attempted to misguide Plaintiff when it told him that it could continue to contact him after Plaintiff demanded that Defendant stop communicating with him.
>
> Defendant further violated §§ 1692e, e(10), and e(11) through its failure to disclose that any information obtained in communications between Plaintiff and Defendant would be used for debt collection. By failing to divulge this statutorily mandated disclosure, Defendant deceptively and misleadingly attempted to obscure Plaintiff's rights under the FDCPA. Consequently, Defendant's objective was to obfuscate Plaintiff's rights in order to unlawfully extract payment from Plaintiff and to prevent Plaintiff from prosecuting an FDCPA claim against Defendant.
>
> \*\*\*
>
> Defendant violated §1692f when it unfairly and unconscionably attempted to collect on a debt by misguiding Plaintiff and obscuring his rights under the FDCPA. By failing to provide its statutorily mandate disclosures, Defendant unlawfully endeavored shield itself from any potential retaliation.

Compl. ¶¶ 31-32, 34.

"In enacting the FDCPA, Congress sought to counter the abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers." *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004). As such, the statute is liberally construed to protect the "least sophisticated debtor." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162,

1171 (9th Cir. 2006); *see also Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993). This objective standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous." *Clomon*, 988 F.2d at 1318-19. For the FDCPA to apply, two threshold criteria must be met. *Olmos v. Bank of Am., N.A.*, 2016 WL 3092194, at *3 (S.D. Cal. June 1, 2016) (citing *Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380, 384 (7th Cir. 2010)). First, the communication must be from a "debt collector" and, second, "the communication by the debt collector that forms the basis of the suit must have been made 'in connection with the collection of any debt.'" *Id.* (quoting 15 U.S.C. 1692c(a)-(b), 1692e and 1692g).

ACR qualifies as a "debt collector." Compl. ¶¶ 6, 26-27. Section 1692e prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e sets forth a non-exclusive list of conduct that constitutes a violation, including "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," and "[t]he failure to disclose in the initial . . . oral communication[] that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector. . . ." 15 U.S.C. § 1692e(10)-(11).

Based on Frazier's allegations, it is clear the two text messages were made "in connection with the collection of any debt" as ACR informed him that it is a debt collection agency and his account was delinquent. *Olmos*, 2016 WL 3092194, at *3 (text messages are communications under the FDCPA); 15 U.S.C. § 1692a(2) (defining "communications" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."). Beyond the text messages, Frazier alleges that when he communicated with ACR, it purposefully attempted to deceive him by stating that he agreed to enter into a payment plan when no such commitment was ever made, and that it attempted to misguide him when it told him that it could continue to contact him after Frazier demanded that ACR stop communicating with him. Further, ACR did not disclose that any information obtained would be used for the purpose of debt

9

collection. Based on these allegations, the Court finds ACR violated 15 U.S.C. § 1692e.

As to Frazier's claim under 15 U.S.C., § 1692f, his only allegation is that ACR "violated §1692f when it unfairly and unconscionably attempted to collect on a debt by misguiding Plaintiff and obscuring his rights under the FDCPA. By failing to provide its statutorily mandate disclosures, Defendant unlawfully endeavored shield itself from any potential retaliation." Compl. ¶ 34. Frazier does not address § 1692f in his motion, other than to argue generally that ACR "violated §§ 1692e, e(10), e(11), and f through its failure to provide the requisite disclosures under § 1692e(11)." Mot. at 8. As Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," and Frazier does not address how ACR violated this provision specifically, the Court cannot find ACR violated 15 U.S.C. § 1692f.

### b. Rosenthal Act

Frazier alleges ACR violated the Rosenthal Act based on the same allegations as his FDCPA claim. Compl. ¶¶ 35-41. The Rosenthal Act is California's version of the FDCPA, as it "mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012). Accordingly, whether an act "violates the Rosenthal Act turns on whether it violates the FDCPA." *Id.* Thus, for the same reasons set forth above, the Court finds Frazier has established a violation of the Rosenthal Act. *See Freligh*, 2016 WL 3748723, at *5 (if a defendant violates the FDCPA, the same reasoning applies to a violation of the Rosenthal Act).

### 3. The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the Court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Dr. JKL Ltd., v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) (citation and quotation marks omitted). When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings). "However, when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal.

10

2014). Here, Frazier seeks $1,000 in statutory fees under the FDCPA, $1,000 under the Rosenthal Act, and $6,560.95 in attorney's fees and costs. Because this is neither substantial nor unreasonable and the damages are tied to ACR's misconduct, the fourth factor weighs in favor of default judgment.

**4.     The Possibility of Dispute Concerning Material Facts**

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. However, upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DirecTV*, 503 F.3d at 851 (citing Fed. R. Civ. P. 55(a)). Further, ACR was given ample opportunity to respond but has made no effort to challenge the complaint; therefore, nothing in the record before the Court suggests a factual dispute. Accordingly, this factor also weighs in favor of granting default judgment.

**5.     Whether Default was Due to Excusable Neglect**

The sixth *Eitel* factor examines whether the defendant's failure to respond to the complaint was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. Here, Frazier provided adequate notice of this action, *see* ECF Nos. 9, 19, yet ACR failed to respond to the present motion. *See S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) ("A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence.") (citations and quotation marks omitted). Further, there is nothing in the record suggesting this failure is based on excusable neglect. *See Shanghai Automation*, 194 F. Supp. 2d at 1005 (default after proper service was not excusable neglect). Thus, this factor supports default judgment.

**6.     Policy Favoring Deciding a Case on its Merits**

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id.* "The existence of Federal Rule of Civil Procedure 55(b), however, shows that this policy is not dispositive." *McMillan Data Commc'ns, Inc. v. AmeriCom Automation Servs., Inc.*, 2015 WL

11

4380965, at *11 (N.D. Cal. July 16, 2015) (citing *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). And a defendant's failure to appear makes a decision on the merits impracticable, if not impossible. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (citation and quotation marks omitted).

Given that ACR has ceased to defend itself in this action and made no effort to respond to recent communication attempts by Frazier, a decision on the merits is impracticable. "In situations such as this, Rule 55(b) allows the court to grant default judgment." *Bd. of Trs. v. Diversified Concrete Cutting, Inc.*, 2018 WL 3241040, at *5 (N.D. Cal. July 3, 2018), *report and recommendation adopted sub nom. Bd. of Trustees as Trs. of Laborers Health & Welfare Tr. Fund for N. Cal. v. Diversified Concrete Cutting, Inc.*, 2018 WL 4775429 (N.D. Cal. July 27, 2018). As such, a decision on the merits would not be possible. In situations such as this, Rule 55(b) allows the court to grant default judgment. This final factor weighs in favor of granting the Motion.

### 7. Summary of the *Eitel* Factors

Based on the analysis above, the undersigned finds each of the *Eitel* factors weighs in favor of granting default judgment. Accordingly, the Court **GRANTS** Frazier's motion and enter default judgment against ACR.

### C. Relief Sought

Once liability is established, the plaintiff seeking default judgment must then establish that the requested relief is appropriate. *Bay Area Painters v. Alta Specialty*, 2008 WL 114931, at *3 (N.D. Cal. Jan. 10, 2008) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

### 1. Damages

The moving party has the burden to "prove up" the amount of damages. *United States v. Sundberg*, 2011 WL 3667458, at *6 (N.D. Cal. Aug. 22, 2011) (citation omitted). Where the amount of damages "is liquid or capable of ascertainment from definite figures contained in documentary evidence or detailed affidavits, the Court may enter default judgment without a hearing on damages." *Id.* (internal quotation marks and citation omitted); *see also Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the

12

amount which the plaintiff is entitled to recover and to give judgment accordingly."). Similarly, if the plaintiff can meet its burden of proving an amount of damages "capable of mathematical calculation" through evidence, testimony, or written affidavit, there is no need for an evidentiary hearing on damages. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981); *Bd. of Trs. of the Boilermaker Vacation Trust v. Shelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

Frazier seeks $1,000 in statutory damages under the FDCPA and $1,000 in statutory damages under the Rosenthal Act. Statutory damages are available without proof of actual damages. *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 781 (9th Cir. 1982). Under the FDCPA, a plaintiff may claim up to $1,000 in statutory damages. 15 U.S.C. § 1692k(a)(2). Under the Rosenthal Act, a court may award statutory damages that are no "less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000)." Cal. Civ. Code § 1788.30. The Ninth Circuit has determined that "[t]he Rosenthal Act's remedies are cumulative, and [are] available even when the FDCPA affords relief." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1069 (9th Cir. 2011).

ACR's violations of the FDCPA and Rosenthal Act warrant an award of statutory damages, although not in the amounts Frazier seeks. As an initial matter, although Frazier seeks the maximum amount allowed under both statutes, he does not include any authority establishing his entitlement to the maximum penalty. In determining the amount of statutory liability, courts "shall consider . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). While Frazier's factual allegations suffice to establish ACR's liability for default judgment purposes, he has not made a compelling showing of his entitlement to an award approaching the maximum statutory damages allowed. The alleged misconduct in this case was not egregious in its alleged "frequency and persistence," as Frazier alleges he received only two texts before he contacted ACR and he communicated with ACR only one time after the texts. *Compare Evans v. Creditor's Specialty Serv., Inc.*, 2016 WL 730277, at *1, 3 (N.D. Cal. Feb. 24, 2016) (finding five voicemail messages, including threats of wage garnishment and legal action, insufficient to warrant the maximum statutory penalty); *Cuevas v. Check Resolution Servs.*, 2013

13

WL 2190172, at *11 (E.D. Cal. May 20, 2013) (finding allegation of "calls" made on one day did not warrant maximum statutory penalty) *with Mulvihill v. St. Amant & Assocs.*, 2014 WL 1665229, at *2 (E.D. Cal. Apr. 24, 2014) (finding nearly 20 calls, even after plaintiff instructed defendant to stop calling him, warranted maximum statutory penalty); *Esget v. TCM Fin. Servs. LLC*, 2014 WL 258837, at *5, 7 (E.D. Cal. Jan. 23, 2014) (awarding maximum statutory damages where defendant "repeatedly" contacted plaintiff's place of work in an attempt to collect an alleged debt, including contacting plaintiff's supervisor and disclosing the alleged debt, and made false threats, including a threat to file a lawsuit and garnish plaintiff's wages). Further, there is no indication ACR's communications included threats or intimidation. *See Neves v. Benchmark Recovery, Inc.*, 2015 WL 6957525, at *4 (N.D. Cal. Nov. 11, 2015) (finding a collection letter that contained no threats or intimidation did not constitute significant or severe non-compliance under the FDCPA).

In sum, the undersigned finds the frequency and persistence of ACR's non-compliance, the nature of its non-compliance, and the extent to which its non-compliance was intentional do not weigh strongly in favor of Frazier's request for the maximum in statutory damages. Courts in this District have previously awarded $400 under each statute for a single voicemail that was deceptive in nature. *See Smith v. Simm Assocs., Inc.*, 2013 WL 1800019, at *2 (N.D. Cal. Apr. 29, 2013) (but finding that "[t]he script of the call makes it clear that the caller attempted to hide the nature of the call"). In *Evans*, the court awarded $700 under each statute based on five voicemail messages that included threats of wage garnishment and legal action. 2016 WL 730277, at *1, 3. Here, Frazier received two text messages in which ACR identified itself as a debt collection agency contacting him about his delinquent account. These texts do not appear to be deceptive as Frazier does not deny that his account was delinquent. However, he does allege ACR was deceptive because it did not disclose that any information obtained would be used for debt collection and, although he had not previously communicated with ACR regarding a payment plan, ACR represented that he had agreed to a payment plan. As such, the Court finds an award of $400 in damages under the FDCPA and $400 under the Rosenthal Act is appropriate.

14

### 2. Attorneys' Fees

Both the FDCPA and the Rosenthal Act impose liability for attorney's fees and costs on defendants found liable under their respective provisions. *See* 15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.309(c). Reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). A reasonable fee is determined by multiplying (1) "the number of hours reasonably expended on the litigation" by (2) "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The lodestar amount may also be adjusted based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted).

To determine the appropriate lodestar amount, the Court must first assess the reasonableness of counsel's claimed hourly billing rate. *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994). In doing so, courts look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the forum where the district court sits, which in this case is the Northern District of California. *Id.*

In order to assess whether the number of hours billed is reasonable, Frazier's counsel must submit detailed records justifying the hours that have been expended. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The Court may reduce the hours through its discretion "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if hours expended are deemed excessive or otherwise unnecessary." *Id.*

Counsel seeks $5,731.25[2] in attorneys' fees for 13.85 hours of attorney time and 4.3 hours of paralegal time. Mot., Ex. A, ECF No. 45-1. Counsel seeks to recover fees at the following billing rates:

---

[2] In their itemization, counsel seeks $5,721.25 but this $10 difference appearances to be a mathematical error.

| | | |
|---|---|---|
| Nathan Volheim (attorney) | 13.35 hours at $375/hour | $5,006.25 |
| Nicholas Wajda (attorney) | .5 hours at $375/hour | $187.50 |
| Kiran Wadia (paralegal) | 2.8 hours at $125/hour | $350 |
| Michelle Barry (paralegal) | 1 hour at $125/hour | $125 |
| Biann Ismail (paralegal) | .5 hours at $125/hour | $62.50 |
| | | **Total: $5,731.25** |

*Id.* In support, counsel provided two declarations from Nathan Volheim, an attorney at Sulaiman Law Group, Ltd. and Frazier's counsel of record. ECF Nos. 45-2, 47. Mr. Volheim attests that he has handled "well over 1,000 cases throughout the country, through which I have established a prominent reputation in the field of consumer law, particularly cases involving the Fair Debt Collection Practices Act." ECF No. 47 ¶ 5. Mr. Volheim also provided information about Nicholas Wajda and the paralegals that worked on this matter. *Id.* ¶¶ 9-10. Frazier's counsel also submitted an itemization detailing the hourly rates and amount of time worked. ECF No. 45-1. Based on this information and the Court's awards of similar hourly rates for attorneys in FDCPA cases, the undersigned finds these rates are reasonable. *See*, *e.g.*, *Neves*, 2015 WL 6957525, at *5 (finding rates of $500 and $400 per hour reasonable "in light of [counsel's] many years of experience in this legal area"); *Martell v. Baker*, 2015 WL 3920056, *2 (N.D. Cal. June 25, 2015) (finding $400 hourly rate reasonable for attorney who specializes in consumer credit litigation and has approximately seven years of experience); *Evans*, 2016 WL 730277, at *4 (finding $320 hourly fee reasonable for attorney with nearly eight years of experience); *Young v. Law Offices of Herbert Davis*, 2014 WL 3418209, at *6 (N.D. Cal. July 11, 2014) (finding rate of $350 per hour reasonable). The Court also finds the $125 hourly rate for paralegal time to be reasonable based on rates previously deemed reasonable in the area. *See, e.g.*, *Freligh*, 2016 WL 3748723, at *9 (finding $145 hourly rate reasonable for paralegals); *Forkum v. Co-Operative Adjustment Bureau, Inc.*, 2014 WL 3827955, at *1 (N.D. Cal. Aug. 4, 2014) (same); *Hetland v. Simm Assocs., Inc.*, 2013 WL 4510594, at *2 (N.D. Cal. Aug. 22, 2013) (same).

The Court also finds the number of hours billed to be reasonable, with counsel working through the pleading, case management, initial discovery, and settlement stages, only to then have

to prepare the request for default and default judgment motion. Judges in this District have found similar and/or higher hours reasonable in comparable FDCPA cases. *See, e.g.*, *Freligh*, 2016 WL 3748723, at *9 (finding 17.2 hours reasonable where counsel spent the majority of time drafting the complaint, request for default, and motion for default judgment): *Neves*, 2015 WL 6957525, at *5 (finding 13.8 hours reasonable where counsel spent 3.5 hours drafting the complaint and 5.4 hours drafting the motion for default judgment); *Crider v. Pac. Acquisitions & Assocs., LLC*, 2015 WL 6689391, at *6 (N.D. Cal. Nov. 3, 2015) (finding 25 hours reasonable); *Page v. Performance Debt Resolution*, 2013 WL 621197, at *7 (N.D. Cal. Jan. 30, 2013), *report and recommendation adopted*, 2013 WL 621139 (N.D. Cal. Feb. 19, 2013) (finding 14.80 hours reasonable); *Basinger-Lopez v. Tracy Paul & Assocs.*, 2009 WL 1948832, at *5 (N.D. Cal. July 6, 2009) (finding 15.3 hours reasonable).

Accordingly, the Court finds the hours reported to be reasonable and **GRANTS** counsel's request for $5,731.25 in attorney's fees.

### 3. Costs

Frazier also seeks costs in the amount of $839.70: $400 in filing fees, $310 in pro hac vice fees, $105 in service costs, and $24.70 in mailing costs. Both the FDCPA and the Rosenthal Act permit a court to award costs. 15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.20(c). The undersigned finds these costs reasonable and therefore **GRANTS** costs in the amount of $839.70.

### V. CONCLUSION

Based on the above analysis, the Court **GRANTS** Plaintiff Joshua M. Frazier's motion for default judgment and enter judgment against Defendant American Credit Resolution, Inc. The Court awards Frazier $800 in statutory damages, $5,731.25 in attorneys' fees, and $839.70 in costs.

**IT IS SO ORDERED.**

Dated: October 21, 2019

THOMAS S. HIXSON
United States Magistrate Judge

17